IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| VILLAGE OF BEDFORD PARK, ILLINOIS, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No. 17 C 1236 ) |
| LUKE OIL, INC., | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION AND ORDER

Just over a century has elapsed since distinguished Harvard Law School Professor Wesley Hohfeld published a law review article (Some Fundamental Legal Conceptions Applied in Judicial Reasoning, 23 Yale L.J. 16 (1913)) that provided then-new insights into the analysis of jural relationships. Some of the terminology that Hohfeld employed was startlingly new and arcane and still bedeviled law students (including the author of this opinion) nearly 35 years later -- and this Court has no first-hand knowledge of how long after that the Hohfeldian concepts continued to be an integral part of jurisprudential education at first-rate law schools.

But by sharp contrast, the coupling at issue in this lawsuit ("duty" and "right") was not invented by Hohfeld -- to the contrary, those concepts had long been most basic in and integral to legal relationships, and there is really no legitimate excuse for the conceptual void that has been displayed by counsel for defendant Luke Oil, Inc. ("Luke Oil") on that score. Here is the long-recognized truism as to those jural correlatives, as simply paraphrased in a much more recent law review article, Joseph William Singer's The Legal Rights Debate in Analytical Jurisprudence from Bentham to Hohfeld, 1982 Wis. L. Rev. 975, 987 (emphasis added):

> Legal rights are not simply entitlements, but jural relations. Correlatives express a single legal relation from the point of view of the two parties. If X has a right against Y that he shall stay off the former's land, the correlative (and equivalent) is that Y is under a duty toward X to stay off the place. <u>If A has a duty toward B, then B has a right against A. The expressions are equivalent.</u>

In this instance, involving a substantial chemical spill resulting from the November 2013 overturning of a Luke Oil tractor/trailer, the Illinois General Assembly has established a statutory duty on the part of Luke Oil (which is a "responsible party" as defined in 430 ILCS 55/3(c))[1] owed to the 13 plaintiffs, all of which are "emergency response agencies" as defined in Act § 3(b)).[2] And here is the statutory duty that has been imposed on Luke Oil by Act § 5(a):

> It shall be the duty of the responsible party to reimburse, within 60 days after the receipt of a bill for the hazardous material emergency incident, the emergency response agencies responding to a hazardous material emergency incident, and any private contractor responding to the incident at the request of an emergency response agency, for the costs incurred in the course of providing emergency action.

That duty is sought to be enforced by plaintiffs in Count I of their three-count Complaint in this action.

Yet after removing this action from its place of origin in the Circuit Court of Cook County to this District Court under the diversity-of-citizenship branch of federal subject matter jurisdiction, Luke Oil has moved pursuant to Fed.R.Civ.P. 12(b)(6) for the dismissal of that Count I with prejudice. In the non-Hohfeldian (perhaps better termed anti-Hohfeldian) universe that would thus be invented by Luke Oil's counsel, his client's express <u>duty</u> to reimburse the 13

---

[1] Further citations to the Illinois Hazardous Material Emergency Response Reimbursement Act (the "Act"), of which the section just cited in the text is a part, will simply take the form "Act § --," omitting the prefatory "430 ILCS 55/."

[2] Those emergency response agencies, the plaintiffs in this action, comprise eight Illinois municipalities, four Illinois Fire Protection Districts and an intergovernmental entity that comprises the other plaintiffs (and likely others as well) and that is made responsible for responding to emergencies within their respective jurisdictions.

plaintiffs "for the costs incurred in the course of providing emergency action" would somehow not be matched with a correlative right on the part of all the plaintiffs against Luke Oil.

Instead, as Luke Oil's counsel would have it in a warped reading of Act § 5(b), if that "responsible party" does not comply with its absolute duty of reimbursement as is required under Act § 5(a) the sole remedy available to the emergency response agencies would have to be found in the Emergency Response Reimbursement Fund ("Fund") established in the Illinois State Treasury by Act § 4. Just how Luke Oil's counsel got off the track (perhaps a better metaphor in this case would be "off the highway") in this action is difficult to understand, but it postures a legal world in which Luke Oil is free to disregard its statutorily imposed duty, even though it is most likely well able to bear the costs of reimbursement, while the injured response agencies would be compelled to turn to a Fund that is restricted in scope and amount -- and which has indeed been dissolved by a statutory amendment effective July 1, 2014, with any amount remaining in the Fund being transferred to a Fire Prevention Fund (see the current versions of Act §§ 4 and 5).

In this Court's view, any sensible reading of the statutory structure as established in the Act (which is titled "Reimbursement to Agencies") would conceptualize the Fund as a sort of fallback resource if any responsible party lacks the resources to carry out its statutory duty. By sharp contrast, Luke Oil and its counsel prefer to regard the Fund as an easy "out" that would free a "responsible party" such as Luke Oil to be a truly irresponsible party -- one that can deliberately shirk its duty by shifting it to an agency plainly devised to play a role comparable to that of a risk-spreading contingent insurer.

When counsel for the parties appeared for the April 13 status hearing and Luke Oil's counsel proved unable (or unwilling) to understand the one-to-one correlation between "duty"

and "right," this Court set May 4 as a date for further input from the litigants on the subject. Further contemplation, however, has occasioned the sua sponte issuance of this opinion so that Luke Oil's counsel can be fully aware of the steepness of the conceptual hill that he must climb. This Court will still await the May 4 filing, with a contemporaneous delivery of a paper Judge's copy of such filing to its chambers, after which counsel for the parties are ordered to appear for a status hearing at 9:15 a.m. May 9 to discuss further proceedings in the case.

                                                Milton I. Shadur
                                                Senior United States District Judge

Date: April 18, 2017